*986 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nosotros la señora Annette Rodríguez Contreras, en representación de su hija T. R., y nos solicita que revoquemos la orden emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 29 de agosto de 2008, que denegó su solicitud de sentencia sumaria por constituir la controversia del caso una cuestión de estricto derecho.
El señor Correa Rodríguez no ha comparecido ante nos en el plazo intimado. El Procurador General de Puerto Rico, en representación del Estado Libre Asociado de Puerto Rico y del Director del Registro Demográfico, se opone a la pretensión de la peticionaria de que se disponga de la cuestión planteada por medio de la sentencia sumaria.
Contrario a la postura que el Procurador General ha sostenido previamente ante este foro apelativo, en la defensa del estado filiatorio que crea el reconocimiento voluntario de un hijo o hija en nuestra jurisdicción, luego de transcurrido el plazo de caducidad fijado para su impugnación, en este caso, el Estado se adhirió al principio “de veracidad” de la paternidad como argumento para validar la actuación administrativa impugnada. Argumenta que mantener el nombre del recurrido en el certificado de nacimiento de T.R., cuando no es su padre biológico, puede no propender a o asegurar el mejor bienestar de la menor.
*987 Tras un estudio detenido del expediente del caso y con el beneficio de la postura del Procurador General de Puerto Rico, expedimos el recurso solicitado, modificamos la orden recurrida y devolvemos el caso para la continuación de los procedimientos de manera consistente con los pronunciamientos de esta sentencia.
Veamos los antecedentes fácticos y las normas de derecho que sirven de fundamento a nuestra determinación.
I
El 11 de febrero de 2008, la señora Rodríguez Contreras, en representación de su hija menor T.R., presentó una demanda en contra del Estado Libre Asociado de Puerto Rico y el señor Carlos Correa Rodríguez, entre otros, para lograr que el Tribunal de Primera Instancia ordene al Registro Demográfico de Puerto Rico a restituir al codemandado Correa Rodríguez como el padre de T. R. en su certificado de nacimiento.
La señora Rodríguez Contreras alegó en la demanda que su hija T. R. nació el 10 de junio de 2000 y fue reconocida voluntariamente por el señor Correa Rodríguez el 11 de julio del mismo año. A principios de 2008, ella solicitó una copia del certificado de nacimiento de la menor y se percató de que el nombre del señor Correa Rodríguez aparecía tachado. Posteriormente se enteró de que los funcionarios del Registro Demográfico tacharon el nombre del señor Correa Rodríguez para cumplir con una orden emitida por el Tribunal de Familia (Family Court) del estado de Nueva York el 27 de abril de 2004. [1] La peticionaria argüyó que “[l]as sentencias dictadas en las jurisdicciones estatales de los Estados Unidos al igual que las extranjeras no operan ex propio vigore, esto es, no son auto ejecutables. ” Véase Apéndice de la peticionaria, pág. 2.
El ELA contestó la demanda y admitió las alegaciones descritas anteriormente; [2] sin embargo, negó que los funcionarios del Registro Demográfico actuaran negligente o culposamente al acatar la orden emitida por el tribunal de Nueva York. El señor Correa Rodríguez fue emplazado por edicto. Por no contestar la demanda en tiempo hábil, se le anotó la rebeldía, la que fue levantada tras comparecer por medio de su abogado. Se le dio plazo para contestar la demanda, pero no obra en autos tal alegación. Tampoco ha comparecido ante nos.
Luego de recibir la alegación responsiva del ELA, la señora Rodríguez Contreras presentó una moción de sentencia sumaria en la que alegó que el ELA aceptó todos los hechos esenciales de la demanda. En ausencia de controversia real sobre tales hechos, sostuvo que procedía que el tribunal resolviera sumariamente la única cuestión planteada: si el Registro Demográfico de Puerto Rico debía cumplir la orden emitida por el tribunal neoyorquino sin haber sido previamente reconocida por un tribunal puertorriqueño mediante el procedimiento de exequátur, según lo establecido en Ex Parte, Márquez Estrella, 128 D.P.R. 243 (1991).
La señora Rodríguez Contreras no acompañó a su solicitud de sentencia sumaria ninguna prueba documental; sin embargo, hizo referencia a los documentos presentados previamente ante el tribunal recurrido, a saber, el Certificado de Paternidad del cual surge el reconocimiento voluntario de la menor T. R. por el señor Correa Rodríguez y la decisión emitida por el Tribunal de Familia del estado de Nueva York, así como la contestación del ELA a la demanda. [3]
En el entretanto, el 6 de junio de 2008, el tribunal recurrido anotó la rebeldía del codemandado Correa Rodríguez, según lo había solicitado la señora Rodríguez Contreras oportunamente. [4] Posteriormente, el ELA presentó una Moción en Oposición a Sentencia Sumaria. En su moción discutió los fundamentos jurídicos que justificaron que los funcionarios del Registro Demográfico cumplieran con la orden del tribunal del estado de Nueva York, sin haber sido reconocida previamente por los tribunales locales. Aunque hizo referencia a la existencia de una controversia de hechos real, no describió exactamente en qué consistía el conflicto sobre la controversia concreta planteada.
El ELA argüyó ante el Tribunal de Primera Instancia, y reitera ante nos, que el Tribunal de Familia del *988 estado de Nueva York desestimó con perjuicio la reclamación de pensión alimentaria instada por la señora Rodríguez Contreras en contra del señor Correa Rodríguez porque este último, según los resultados de las pruebas de ADN ordenadas por ese foro en el pleito de alimentos, no era el padre biológico de la menor. Por esto, el foro neoyorquino ordenó al Departamento de Salud de Puerto Rico, agencia a la que está adscrito el Registro Demográfico, a eliminar el nombre del señor Correa Rodríguez del certificado de nacimiento de T.R., so pena de desacato. [5]
Con relación a esa orden, el ELA aseguró que “[e]l Registro [la] recibió y al igual que cientos de casos anteriores siguió el procedimiento legal que por décadas había seguido [...] [L]a práctica que tenía el Registro era a los efectos de que toda sentencia u orden que proviniera de un Tribunal estatal de Estados Unidos recibía entera fe y crédito, razón por la cual se ejecutaba sin ulteriores procedimientos.” Además, aseguró que “[e]l procedimiento de exequátur se llevaba a cabo, pero sólo para sentencias y órdenes provenientes de otras jurisdicciones fuera de los Estados Unidos. ” [6] El ELA añadió que, según la Ley Habilitadora del Registro y su Reglamento, el Registrador tiene la discreción para exigir la prueba que estime necesaria para realizar las modificaciones solicitadas a los certificados de nacimiento que custodia. En este caso, la orden judicial en cuestión constituyó prueba suficiente para realizar el cambio.
El Estado acompañó su moción con los siguientes documentos: el certificado de nacimiento de la menor T. R., la orden dictada por el Tribunal de Familia del estado de Nueva York para que las partes se realizaran las pruebas de ADN, las autorizaciones suscritas por Rodríguez Contreras y Correa Rodríguez para realizarse las pruebas y los resultados de las pruebas de ADN que demuestran que el señor Correa Rodríguez no es el padre biológico de la menor.
Luego de este intercambio de mociones, el señor Correa Rodríguez compareció al pleito y solicitó que se levantara la anotación de rebeldía porque tenía defensas que presentar a la demanda. El 29 de agosto de 2008, el tribunal a quo dejó sin efecto la anotación de rebeldía y dio tiempo al recurrido para contestar la demanda. También denegó la solicitud de sentencia sumaria presentada por la señora Rodríguez Contreras, sin expresar fundamento alguno para su decisión. La peticionaria acude ante nosotros por vía del presente recurso. En su ponencia señala que el tribunal recurrido cometió el siguiente único error:

“Erró el Tribunal de Primera Instancia, Sala Superior de Carolina, al determinar NO HA LUGAR a la solicitud de sentencia sumaria, al no existir una controversia real sustancial en cuanto a los hechos materiales y esenciales en el presente caso, quedando única y exclusivamente una controversia de derecho respecto a si el Registro [Demográfico] podía o no eliminar el reconocimiento voluntario ejecutando deforma automática una Orden emitida por un tribunal estatal de otro estado, de otra jurisdicción. ”

La cuestión planteada ante nos no es si procede dictar una sentencia sumaria para disponer de la controversia principal planteada en el caso, esto es, la impugnación de la actuación administrativa con el fin de restituir las constancias originales a un certificado de nacimiento que obra en el Registro Demográfico de Puerto Rico. La cuestión planteada es más compleja.
En el presente caso, la señora Rodríguez Contreras presentó una demanda contra el ELA y el señor Correa Rodríguez en la que alegó los siguientes hechos: (1) que su hija T. R., nació el 10 de junio de 2000; (2) que el señor Correa Rodríguez la reconoció como padre, voluntariamente y por escrito, el 11 de julio de 2000; (3) que en el año 2008 se percató de que el nombre del recurrido, Correa Rodríguez, fue tachado del certificado de nacimiento de la menor; (4) que los funcionarios del Registro Demográfico realizaron ese acto para cumplir con una orden expedida por el Tribunal de Familia del estado de Nueva York el 27 de abril de 2004, y (5) que la orden del tribunal neoyorquino no fue reconocida mediante el procedimiento de exequátur antes de darle entera fe y crédito y proceder a su ejecución.
*989 Surge del expediente que el ELA admitió cada uno de esos hechos, pero limitó su oposición a negar cualquier tipo de responsabilidad negligente o culposa de sus funcionarios al acatar la referida orden del tribunal de Nueva York. Es decir, en su oposición, el ELA alegó la existencia de una controversia real de hechos, aunque no la identificó. Solamente discutió los fundamentos de derecho que, según su apreciación, pudieron justificar que los funcionarios del Registro Demográfico ejecutaran una orden emitida por un tribunal estatal estadounidense sin que la misma fuera previamente reconocida mediante el procedimiento de exequátur.
En el presente recurso de certiorari, nos limitamos a evaluar si el Tribunal de Primera Instancia debe celebrar de inmediato el procedimiento de exequátur, como solicitado. La forma de disposición de las controversias pendientes en el caso es asunto que corresponde a ese foro.
II
El Artículo II, Sección 1 de la Constitución del Estado Libre Asociado de Puerto Rico, la Ley 17 de 20 de agosto de 1952, [7] el Código Civil y la jurisprudencia del Tribunal Supremo de Puerto Rico, han fijado, en su justo contenido, las normas que regulan el derecho filiatorio en Puerto Rico. No hay duda de que el certero y oportuno establecimiento del estado filiatorio de una persona reviste el más alto interés público. Para que se comprenda el alcance preciso de nuestra sentencia, debemos hacer unos pronunciamientos introductorios sobre la naturaleza del recurso que tenemos ante nos y sobre las consecuencias de la litigación interestatal en materia de Derecho de Familia.
La cuestión traída ante nosotros se reduce a contestar la siguiente interrogante: ¿Podía el Director del Registro Demográfico ordenar la alteración o modificación de las constancias del registro por virtud de una orden judicial de un estado de Estados Unidos sin someterla previamente al procedimiento de exequátur, según ha requerido el Tribunal Supremo de Puerto Rico? La respuesta obvia es que no.
Analicemos la figura del exequátur, con los matices adoptados en nuestra jurisprudencia, para entender el alcance de esta respuesta.
Se ha dicho que, por razón de su propia esencia, el principio de soberanía rechaza la efectividad automática de las sentencias y órdenes dictadas por los tribunales de un estado o país extranjero. Acorde con este principio, el derecho público de la mayor parte de las naciones del mundo civilizado requiere el reconocimiento y la convalidación de las sentencias extranjeras por los tribunales del foro donde se pretende hacer efectiva, debido a que la sentencia no opera en forma directa o ex propio vigore. Mench v. Mangual, 161 D.P.R. 851, 856 (2004); Márquez Estrella, Ex parte, 128 D.P.R. 243, 247, 255 (1991).
Por lo dicho, todas las sentencias extranjeras o dictadas fuera de Puerto Rico [8] —incluidas las dictadas por los tribunales estatales de los Estados Unidos — , requieren el reconocimiento de los tribunales puertorriqueños de que puedan ser ejecutadas o en alguna otra forma hacerse efectivas en el Estado Libre Asociado de Puerto Rico. [9] Márquez Estrella, Ex parte, 128 D.P.R., a la pág. 255. Tradicionalmente, ese reconocimiento y convalidación se logra en el procedimiento denominado exequátur. Id., a la pág. 247.
El propósito de la acción de reconocimiento de la sentencia o de exequátur es el de “garantizar el debido proceso de ley a las partes afectadas por la ejecutoria extranjera y conceder a éstas una oportunidad razonable para presentar sus defensas y ser escuchadas”. Mench Fleck v. Mangual González, 2004 J.T.S. 80, a la pág. 1091; Márquez Estrella, Ex parte, 128 D.P.R., a la pág. 255. No obstante, el tribunal ante el cual se ventile ese procedimiento no puede entrar a considerar los méritos de la sentencia extranjera. Luego de resolver los planteamientos de índole procesal que sean pertinentes, se ceñirá a determinar si la sentencia extranjera cumplió con todas las normas del Derecho Internacional Privado expuestas en Ef. Litográficos v. Nat. Paper & Type Co., 112 D.P.R. 389, 395-396 (1982); Márquez Estrella, Ex parte, 128 D.P.R., a la pág. 255.
*990 Las normas de Derecho Internacional Privado que regirán el proceso de exequátur y la convalidación de sentencias extranjeras en Puerto Rico, en ausencia de tratado o legislación especial, son: (1) Que la sentencia extranjera haya sido dictada por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma, (2) Que la sentencia haya sido dictada por un tribunal competente, (3) Que se haya observado el debido proceso de ley por el tribunal que emitió la sentencia, (4) Que el sistema bajo el cual se dictó la sentencia se distinga por su imparcialidad y ausencia de prejuicio contra los extranjeros; (5) Que la sentencia dictada en el extranjero no sea contraria al orden público del foro requerido o local, que no sea contraria a los principios básicos de la justicia y que no haya sido obtenida mediante fraude. Mench Fleck v. Mangual González, 2004 J.T.S. 80, a la pág. 1091; Márquez Estrella, Ex Parte, 128 D.P.R. a la pág. 250; Ef. Litográficos v. Nat. Paper & Type Co., 112 D.P.R., a las págs. 395-396.
Por su parte, el Tribunal Supremo de Puerto Rico ha establecido las siguientes reglas para dirigir el procedimiento del exequátur en los foros judiciales del país:

“1. El mismo se iniciará mediante la presentación de una demanda en la sala correspondiente del Tribunal Superior de Puerto Rico en contra de todas las demás personas afectadas por dicha sentencia.

2. En lugar de dicha demanda, se podrá admitir una solicitud ex-parte cuando comparecen en la misma todas las personas afectadas por la sentencia cuyo reconocimiento y ejecución se pretenda. Dicha solicitud deberá ser suscrita bajo juramento por todos y cada uno de los comparecientes.

3. El procedimiento se tramitará en la forma ordinaria provista por las Reglas de Procedimiento Civil de Puerto Rico.

4. La demanda o la solicitud ex-parte que se presente deberá estar acompañada de una copia certificada de la sentencia cuya convalidación se solicita y de una traducción fiel y exacta de la misma al idioma español en caso de que no haya sido originalmente redactada en este idioma o en el idioma inglés. La copia certificada de la sentencia debe ser legible, estar completa y deberá cumplir con los requisitos pertinentes establecidos en la Regla 79 de las Reglas de Evidencia de Puerto Rico.

5. En todo caso en que, a los fines de lograr su posterior inscripción en el Registro de la Propiedad, se solicite la convalidación de las sentencias a las cuales se refiere el Art. 45 de la Ley Hipotecaria, deberá notificarse al Ministerio Fiscal.

6. En todo caso en que puedan ser afectados los intereses de menores o incapacitados, deberá incluirse en la demanda o en la solicitud ex-parte que se presente, a los padres y/o al tutor del menor o incapacitado y se notificará de la misma al Procurador o Procuradora Especial de Relaciones de Familia, para que dicho funcionario pueda defender los intereses del menor o incapacitado.

7. Cuando, ajuicio del Tribunal, se trate de un asunto de orden o interés público, se notificará con copia de la demanda o de la solicitud ex-parte al Secretario de Justicia de Puerto Rico a los fines de que éste pueda comparecer en el procedimiento en representación del Estado Libre Asociado.

8. Para la revisión de las resoluciones, sentencias u otras providencias del tribunal de instancia, se seguirán los procedimientos establecidos en las Reglas de Procedimiento Civil y en el Reglamento del Tribunal Supremo.

9. Una vez decretado el reconocimiento o convalidación de la sentencia extranjera, la fase de su ejecución se regirá por las disposiciones contenidas en nuestro ordenamiento procesal vigente para la ejecución de nuestras sentencias. ”

*991 Márquez Estrella, Ex parte, 128 D.P.R., a las págs. 253-254.
Es importante tener presente que “la validez de la sentencia extranjera y el reconocimiento de la misma por el foro donde se pretende hacerla efectiva son dos conceptos distintos. La validez constituye, según se infiere de lo expresado anteriormente, un requisito para el reconocimiento. Pero el hecho de que una sentencia sea válida no conlleva necesariamente el reconocimiento de la misma, ya que ello implica la aceptación del estado o país del foro de origen en cuanto a las personas y ala materia que quedará afectada por la ejecutoria. Por lo tanto, esta aceptación estará limitada por consideraciones de orden público, orden constitucional, los intereses, principios y valores del estado o país del foro donde se promueve el reconocimiento”. Márquez Estrella, Ex parte, 128 D.P.R., a la pág. 255.
Ahora bien, en el caso de las sentencias emitidas por los tribunales de las jurisdicciones estatales de los Estados Unidos de América, el Tribunal Supremo aclaró que éstas son acreedoras de entera fe y crédito (full faith and credit), independientemente de cuál sea la política pública y las disposiciones legales de Puerto Rico sobre la materia o asunto de que se trate. Sin embargo, no hay que reconocerle validez alguna a una sentencia estadounidense cuando se haya dictado sin jurisdicción sobre la materia o sobre la persona, cuando el procedimiento judicial no garantizó el debido proceso de ley o si se obtuvo mediante fraude. Márquez Estrella, Ex parte, 128 D.P.R. a las págs. 255-256.
Esta norma podría significar que la política pública de Puerto Rico relativa a la protección de la filiación ganada por una persona -luego de caducar la acción de impugnación de la paternidad presunta o del reconocimiento voluntario-, cedería ante la declaración contraria de un tribunal estadounidense si el dictamen fue emitido con jurisdicción sobre los litigantes y la materia y con las garantías del debido proceso de ley. La determinación de que así fue, por lo que merece entera fe y crédito, es una prerrogativa judicial, no administrativa, y se ejerce por los tribunales mediante el exequátur.
Esta conclusión nos obliga a hacer varios pronunciamientos sobre la naturaleza del caso que tenemos ante nos.
III
En el caso de autos, el recurrido Correa Rodríguez reconoció a T. R. como su hija, de manera voluntaria y expresa. De este hecho no hay duda, pues así surge del certificado de paternidad que obra en autos. En Puerto Rico, ese acto jurídico voluntario generó un estado filiatorio similar al de la paternidad jurídica y su impugnación está sujeta a las mismas acciones y plazos que se le reconocen al marido de la madre, como padre presunto ante la ley.
El reconocimiento voluntario es un acto jurídico puro, es decir, no puede estar sujeto a condición; expreso, aunque puede deducirse implícitamente de la conducta del declarante; personal y unilateral, aunque es transmisible a los herederos y no podría imponerse a una persona mayor de edad; formal y en ocasiones solemne, porque la ley requiere que conste de determinada manera. Como regla general, sus efectos legales sobre la relación filiatoria así creada son perpetuos o irrevocables. Almodovar v. Méndez, 125 D.P.R. 218, 237-238 (1990).
Lo dicho no quita que la causa del reconocimiento voluntario, como acto jurídico, es la creencia de que el inscrito es hijo del declarante. Ausente o viciada esa causa, puede el declarante impugnar la validez del acto que ha realizado por error o contra su voluntad. Se admite, sin embargo, su impugnación por las causas limitadas que reconocen la ley y la jurisprudencia. Así, para anular el reconocimiento voluntario, se admiten varias acciones: (1) la nulidad absoluta del acto; (2) la impugnación por vicios del consentimiento del declarante; [10] y (3) la impugnación, por “no coincidir el estado filiatorio con la realidad biológica”. [11] Véase a Castro v. Negrón, 159 D.P.R. 568, 588-589 (2003), cuya doctrina fue reiterada en Mayol v. Torres, 164 D.P.R. 517, *992 541-543 (2005).
Según el Artículo 117 del Código Civil, la acción para impugnar la paternidad del hijo o hija debe ejercitarse dentro de los tres meses siguientes a la inscripción del nacimiento en el Registro Demográfico, si el marido o el presunto padre “se hallaré” o residiere en Puerto Rico. De encontrarse fuera de Puerto Rico, la impugnación debe ejercitarse dentro de los seis meses, contados desde que tuvo conocimiento del nacimiento o de la inscripción. Art. 117, 31 L.P.R.A see. 465. Destaquemos que este “conocimiento” se refiere al hecho del nacimiento o la inscripción, no a la ignorancia o al desconocimiento del padre legal sobre la certeza de su paternidad. Calo Morales v. Cartagena Calo, 129 D.P.R. 102, 123 (1991); Almodovar v. Méndez, 125 D.P.R., a la pág. 260. Así lo ha reiterado el Tribunal Supremo en varias ocasiones.
El plazo de tres o seis meses a partir de la inscripción o del conocimiento del nacimiento o inscripción, según el caso, ha resistido reiteradamente el ataque constitucional, por el interés apremiante del Estado en establecer con certeza y premura el nexo filiatorio, que es un atributo esencial del estado civil de las personas.
Entendemos, pues, que para que coexistan ambas políticas públicas, es decir, el principio de veracidad y la seguridad del estado filiatorio, procede liberalizar la búsqueda de la verdad mientras aún esté vigente el breve plazo de tres meses para impugnar el reconocimiento. Es decir, consideramos que la política pública contra el arrepentimiento se protege precisamente por lo corto del plazo para impugnar un reconocimiento. Al mismo tiempo, se salvaguarda la política pública a favor de la búsqueda de la verdad al facilitar los medios para descubrirla antes de transcurrir dicho plazo.
Mayol v. Torres, 164 D.P.R., a la pág. 554.
En González v. Echevarría, res. el 21 de noviembre de 2006, 169 D.P.R. _ (2006), 2006 J.T.S. 184, el Tribunal Supremo de Puerto Rico reiteró que la fecha para comenzar a computar el plazo de tres meses para impugnar el reconocimiento será precisamente la del acto del reconocimiento, aunque la causa de impugnación sea la inexactitud de la filiación. [12] En lo que importa al caso de autos, en González v. Echevarría, de modo enfático, con una opinión 4-2, se reafirma el principio de “que independientemente de la importancia que reviste la investigación biológica [...], no cabe soslayar los términos de caducidad para instar la correspondiente acción de impugnación de reconocimiento”. Y se añade:

“La disposición que hoy acogemos establece el balance más justiciero respecto los variados intereses que matizan esta controversia. Es decir, entre la finalidad que persigue la investigación sobre la paternidad que es, la adecuación de la verdad jurídica-formal a la verdad biológica, frente a los valores trascendentales de la protección de la familia en general y las hijas e hijos en particular, así como el de la seguridad jurídica en el estado civil de las personas. ”

2006 JTS 184, a la pág. 16.
Más recientemente, en Alvarez Torres Muñiz v. Sorani Jiménez, res. el 22 de enero de 2009, 175 D.P.R. _ (2009), 2009 JTS 15, volvió a reiterarse de manera enfática que “[ujna vez transcurren los plazos de caducidad aplicables, se consolida el status familiae adquirido por el hijo”. El Tribunal Supremo añadió que, caducada la acción de impugnación de reconocimiento, “la condición de hijo adquirida por el menor, en virtud del acto de reconocimiento voluntario ”, no podía ser cuestionada por quien lo reconoció ni por sus sucesores, ya que éstos “carecían de causa de acción para impugnar el reconocimiento voluntario efectuado por su [causante]”.
Es decir, en Puerto Rico, transcurrido el plazo de tres o seis meses, según el caso, se consolidó jurídicamente el estado filiatorio de T. R. y así surgía del Registro Demográfico hasta su modificación. [13] No *993 obstante, la peticionaria buscó la asistencia del foro judicial estadounidense del lugar de residencia del padre y se sometió a su jurisdicción en un pleito de alimentos. Fue así que el Tribunal de Familia del estado de Nueva York, con autoridad legal y jurisdicción para atender el reclamo alimentario, pasó juicio sobre la validez del reconocimiento voluntario y determinó que procedía su anulación por las causas que se reconocen en ese estado. Fue entonces como nació el conflicto de leyes o problema de Derecho Internacional Privado que se ha planteado ante el Tribunal de Primera Instancia.
¿Podía el estado de Nueva York negar entera fe y crédito a la inscripción de T. R. como hija del recurrido en el Registro Demográfico de Puerto Rico, luego de consolidado el estado filiatorio de la menor? La solución de este conflicto de normas corresponde al Tribunal de Primera Instancia, luego de pasar juicio sobre la validez de la orden del tribunal de Nueva York. [14]
Ahora bien, para evaluar la validez de la orden neoyorquina, hay que considerar lo dispuesto en sus leyes sobre el reconocimiento de paternidad y su impugnación, así como la obligación de Nueva York de dar entera fe y crédito a la inscripción de Puerto Rico. La Sección 516-a {Acknowledgment of paternity) del Artículo 5 {Paternity Proceedings) de la Parte I {Jurisdiction and Duties to Support) del Family Court Act de Nueva York dispone:

“§ 516-a. Acknowledgment of paternity

(a) An acknowledgment of paternity executed pursuant to section one hundred eleven-k of the social services law or section four thousand one hundred thirty-five-b of the public health law shall establish the paternity of and liability for the support of a child pursuant to this act. Such acknowledgment must be reduced to writing and filed pursuant to section four thousand one hundred thirty-five-b of the public health law with the registrar of the district in which the birth occurred and in which the birth certificate has been filed. No further judicial or administrative proceedings are required to ratify an unchallenged acknowledgment of paternity.

(b)(i) An acknowledgment of paternity executed pursuant to section one hundred eleven-k of the social services law or section four thousand one hundred thirty-five-b of the public health law may be rescinded by either signator's filing of a petition with the court to vacate the acknowledgment within the earlier of sixty days of the date of signing the acknowledgment or the date of an administrative or a judicial proceeding (including a proceeding to establish a support order) relating to the child in which either signator is a party. [...]

(ii) After the expiration of sixty days of the execution of the acknowledgment, either signator may challenge the acknowledgment of paternity in court by alleging and proving fraud, duress, or material mistake of fact. [...] If the petitioner proves to the court that the acknowledgment of paternity was signed under fraud, duress, or due to a material mistake of fact, the court shall order genetic marker tests or DNA tests for the determination of the child's paternity. No such test shall be ordered, however, upon a written finding by the court that it is not in the best interests of the child on the basis of res judicata, equitable estoppel, or the presumption of legitimacy of a child born to a married woman. If the court determines, following the test, that the person who signed the acknowledgment is the father of the child, the court shall make a finding of paternity and enter an order of filiation. If the court determines that the person who signed the acknowledgment is not the father of the child, the acknowledgment shall be vacated.

(€)[...]

(d) A determination of paternity made by any other state, whether established through an administrative or judicial process or through an acknowledgment of paternity signed in accordance with that state's laws must be accorded full faith and credit, if and only if such acknowledgment meets the requirements set forth in section 652(a)(7) of title IV-D of the social security act.”

*994 Mckinney's Consolidated Laws of New York Annotated, Article 5, Part 1, § 516-a. (Énfasis nuestro.)
Esta disposición legal ha sido interpretada por los foros judiciales de Nueva York, los que concluyen que, en atención de los mejores intereses del menor, luego de expirado el plazo de 60 días, es indispensable pasar juicio sobre las alegaciones de fraude o error en el reconocimiento antes de ordenar las pruebas de paternidad. Incluso, antes de ordenar las pruebas, debe atenderse la cuestión medular de cómo el proceso afecta los intereses óptimos del menor involucrado. Si no se ha respetado esta exigencia procesal, sería inadmisible sostener la impugnación del reconocimiento en el resultado negativo de las pruebas. Véase, entre otros, a Westchester County Dep't of Soc. Serv. v. Robert W.R., 25 A.D.3d 62, 803 N.Y.S.2d 672 (2d Dept. 2005); Matter of Demetrius H. v. Mikhaila C.M., 35 A.D.3d 1215, 827 N.Y.S.2d 810 (4th Dept. 2006).
Por otro lado, como vimos, la Sección 516-a también reconoce entera fe y crédito a la determinación de paternidad admitida por cualquier estado, ya fuere establecida en un proceso judicial o administrativo o mediante un reconocimiento voluntario, siempre que éste reúna los criterios exigidos en la Sección 652(a)(7) del Título IVD de la Ley de Seguro Social. [15] Debe el Tribunal de Primera Instancia considerar ambas disposiciones legales al momento de resolver la interrogante de si el tribunal de Nueva York debió reconocer entera fe y crédito al estado filiatorio dado a T. R. en Puerto Rico, por medio del certificado de paternidad que suscribió voluntariamente el recurrido. Vemos, pues, que lo planteado en este caso no terminará con el exequátur. Luego debe darse el análisis de normas conflictivas para ver cuál es la que debe prevalecer en el caso.
Por lo dicho, el exequátur es un proceso preliminar e indispensable en este litigio, porque trata de la ejecución de un dictamen extranjero. Por esto, advertimos que el recurso de la sentencia sumaria no era el apropiado para acelerar la solución de la reclamación incoada ante el Tribunal de Primera Instancia: restituir la inscripción de la paternidad del recurrido en el certificado de nacimiento de T.R. Es decir, el conceder el único remedio que nos solicita la peticionaria, que se ordene al Tribunal de Primera Instancia celebrar el proceso de exequátur, no tendrá como consecuencia inmediata la restitución del nombre del señor Correa Rodríguez como padre de la niña T. R.
Por imperativo de la cláusula de entera fe y crédito de la Constitución federal, luego de que se pase juicio sobre la validez de la orden del tribunal estadounidense, el foro a quo pasaría a dilucidar el conflicto legal que presenta el caso: si deja en efecto la modificación hecha al certificado de nacimiento de T. R. porque el recurrido demostró el fraude o error de hecho en el reconocimiento, según permite la ley de Nueva York, o si, por consideraciones de política pública insoslayables en Puerto Rico, se niega a ponerla en vigor porque el estado filiatorio de T.R. ya era inimpugnable o merecía entera fe y crédito por parte del tribunal de Nueva York. No hemos de adelantar nuestro juicio sobre este particular porque aún no está planteado ante nos.
En fin, el Tribunal de Primera Instancia debe evaluar si la orden de Nueva York estuvo precedida de las salvaguardas que garantiza la legislación de ese estado en estos procedimientos, por medio del exequátur, para luego resolver la cuestión medular del caso. Si la orden no estuvo precedida de las salvaguardas indicadas en la legislación y la jurisprudencia de Nueva York, no habría que entrar en los méritos del conflicto de legislación entre dos jurisdicción de Estados Unidos. El estado filiatorio de T.R. permanecería incólume y habría que hacer la restitución de la filiación paterna en el Registro. El recurrido ha pedido audiencia para sostener la validez de la orden del tribunal de Nueva York y su ejecución en Puerto Rico. Si el proceso en Nueva York cumplió con el debido proceso de ley, corresponde al Tribunal de Primera Instancia dirimir el conflicto normativo planteado sobre el estado filiatorio de T.R., asunto que, reiteramos, aún no está ante nuestra consideración.
IV
Por los fundamentos expresados, expedimos el auto solicitado y modificamos la orden emitida por el Tribunal de Primera Instancia el 29 de agosto de 2008 a los únicos efectos de ordenar la celebración del proceso de exequátur a la brevedad posible.
*995 Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Brau Ramírez concurre con la conclusión del Panel de que la sentencia del Tribunal de Nueva York requiere del trámite previo de exequátur para su aplicación en Puerto Rico. También está de acuerdo conque la presente controversia no debe ser adjudicada sumariamente. El Juez Brau Ramírez difiere, sin embargo, de cualquier intimación que sugiera que, en las circunstancias del caso de autos en las que la peticionaria escogió voluntariamente comparecer ante los tribunales de Nueva York y someterse a la jurisdicción de ese foro, competa al foro local pasar juicio sobre los méritos y la corrección del dictamen emitido por el tribunal de Nueva York, lo que está prohibido por la cláusula de entera fe y crédito de la Constitución de los Estados Unidos.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 47

1. Family Court of the State of New York, Case No. U-24547.

2. En su contestación a la demanda, el ELA admitió:

“(1) que la señora Rodríguez Contreras era la madre de T.R.;

(2) que la menor nació el 10 de junio de 2000 en Carolina y que dicho acto surge de su certificado de nacimiento núm. 152-2000-00775-025906-00000-05236073;

(3) que la menor fue reconocida voluntariamente por el señor Carlos Javier Correa Rodríguez el 11 de julio de 2000 y que dicho acto quedó evidenciado en el Certificado de Paternidad suscrito y juramentado por éste; y

(4) que los funcionarios del Registro Demográfico tacharon el nombre del señor Correa Rodríguez del referido certificado de nacimiento en cumplimiento con una orden emitida el 27 de abril de 2004 por el Tribunal de Familia del Estado de Nueva York. ”

3. Véase, Moción en Cumplimiento de Orden, págs. 12-15 del Apéndice de la peticionaria. Además, ésta presentó copias de dos certificados de nacimiento de su hija. En el primero, aparece el señor Correa Rodríguez como el padre de la menor y en el segundo no surge cuál es el nombre del padre. Véase, págs. 4-5 del Apéndice de la peticionaria.

4. Véase, pág. 31 y págs. 23-26, respectivamente, del Apéndice de la peticionaria.

5. Véase, pág. 40 del Apéndice de la peticionaria.

6. Véase, Moción en Oposición a Sentencia Sumaria, págs. 36-37 del Apéndice de la peticionaria.

7. Esta ley se hizo retroactiva al 25 de julio de ese mismo año, fecha en que entró en vigor la Constitución del Estado Libre Asociado. La Ley 17 dispuso:
“Todos los hijos tienen respecto a sus padres y a los bienes relictos por éstos, los mismos derechos que corresponden a los hijos legítimos. ”

8. En cuanto al alcance del término sentencia extranjera, en Márquez Estrella, Ex parte, 128 D.P.R. 243, 250 (1991), nota al calce número 5, el Tribunal Supremo expresó que:

“Es una sentencia extranjera aquélla dictada por un Tribunal ajeno al Estado Libre Asociado, por lo que serán consideradas sentencias extranjeras tanto aquéllas dictadas por los tribunales de países extranjeros como por los tribunales estatales de los Estados Unidos. [...]”.

9. En Roseberry v. Registrador, 114 D.P.R. 743 (1983), el Tribunal Supremo resolvió que la cláusula de entera fe y crédito *996 contenida en el Art. IV, Sec. 1 de la Constitución de Estados Unidos no exige el reconocimiento automático o directo en Puerto Rico de una sentencia emitida por un tribunal estatal de la nación estadounidense. Al dilucidar la cuestión, el Tribunal hizo las siguientes expresiones:

“Las disposiciones concernidas de la Ley Hipotecaria de Puerto Rico y su Reglamento no chocan con la Constitución de Estados Unidos ni con la legislación federal citada. La Sec. 1 del Art. IV de la Constitución no prescribe el procedimiento para dar entera fe y crédito a los actos públicos, documentos y procedimientos judiciales de otras jurisdicciones domésticas. Tal sección no exige que un Registro de la Propiedad en Puerto Rico le dé directamente entera fe y crédito a una sentencia extranjera, haciendo caso omiso de las disposiciones de nuestras leyes que exigen la previa intervención de los tribunales. No opera ex proprio vigore.

La razón para tal regla es clara. La cláusula de entera fe y crédito está sujeta a excepciones. Las sentencias emitidas en un estado no tienen derecho a entera fe y crédito en otro estado, por ejemplo, si la sentencia se dictó sin jurisdicción sobre alguna parte o sobre la materia. Williams v. North Carolina, 317 U.S. 287 (1942); Underwriters Assur. Co. v. N.C. Guaranty Assn., 455 U.S. 691 (1982); Restatement Second, Judgments Sec. 81, pág. 251 (1982). Es legítimo que un estado requiera que las sentencias extranjeras no sean ejecutables a menos que sus tribunales lo ordenen, lo cual ofrece la necesaria oportunidad para que una parte interesada pueda interponer alguna de las defensas reconocidas a la aplicación de la cláusula de entera fe y crédito. ”

10. Los vicios aplicables al acto del reconocimiento son los mismos que el Código Civil reconoce como causas de impugnación de un contrato: error, dolo, violencia e intimidación. Art. 1217 Código Civil, 31 L.P.R.A. sees. 3404. Véase a Almodóvar v. Méndez, 125 D.P.R., a las págs. 249-250, cuya doctrina fue reiterada en Oaks Reyes v. Ortiz Aponte, 135 D.P.R. 898, 899 (1994). Véase también a Raúl Serrano Geyls, II Derecho de Familia de Puerto Rico y Legislación Comparada 1013-1017 (San Juan 2002).
Cuando se impugna el reconocimiento por error, como vicio del consentimiento, “es preciso que el error alegado ‘...se compruebe y derive de hechos transcendentales que afecten directa y notoriamente la creencia equivocada en que pudo estar el padre de que la madre sólo de él pudo concebir, sin que sea lícito de otro modo la suposición de error, pues equivaldría autorizar un arrepentimiento y cambio de voluntad, que es en absoluto incompatible con las condiciones de permanencia de todo estado civil, permanencia que afecta al interés social y consiguientemente al orden público’... ”. Almodóvar v Méndez, 125 D.P.R., a la pág. 262, que adopta la doctrina sentada en la Sentencia del Tribunal Supremo Español de 25 de junio de 1909, Jurisprudencia Civil, Tomo 115, pág. 499.

11. En cuanto a la prueba requerida para impugnar la paternidad presunta y el reconocimiento voluntario, la jurisprudencia ha abandonado la exclusividad de la prueba de la "imposibilidad física” del marido o padre presunto respecto a la esposa y madre del hijo de ésta, para dar paso a la prueba de la “imposibilidad de paternidad", que fue adoptada en Moreno Álamo v. Moreno Jiménez, 112 D.P.R. 376, 387 (1982). Más recientemente, en Castro Torres v. Negrón Soto, ya citado, y reiterado en Mayol v. Torres, ante, el Tribunal Supremo destacó la “no coincidencia con la realidad biológica” del hijo como criterio adicional que podría regir los pleitos de impugnación de paternidad. En cualquier caso, tanto en las acciones de filiación como en las de impugnación, se dará preferencia a las pruebas científicas desarrolladas con ese propósito, por sus resultados irrefutables para establecer lazos consanguíneos entre personas. Véase, además, a Pol Sella v. Lugo, 107 D.P.R. 540 (1978), y la extensa secuela de casos que reitera ese pronunciamiento. Como resultado de la doctrina legal sentada por el Tribunal Supremo de Puerto Rico en cuanto a la confiabilidad de las pruebas de sangre, se enmendaron las Reglas de Evidencia para exigir el examen sanguíneo o genético en todo pleito “en que la paternidad sea un hecho pertinente”. Regla 82 de las de Evidencia, 32 L.P.R.A. Ap. IV. Véase Serrano Geyls, Op. Cit., Vol. II, 1032-1044.

12. En la opinión disidente de la Juez Fiol Matta en González v. Echevarría, ella explica que está de acuerdo conque el plazo para la acción por inexactitud sea de tres meses, aunque no a partir del acto de reconocimiento, sino del conocimiento de la inexactitud.

13. La Ley que regula lo concerniente a las inscripciones de los nacimientos, casamientos y defunciones en Puerto Rico es la Núm. 24 del 22 de abril de 1931, según enmendada, conocida como la Ley del Registro Demográfico de Puerto Rico, 24 L.P. R.A. § 1041 et seq. Esta ley crea el Registro General Demográfico de Puerto Rico, establecido en la División del Registro Demográfico y Estadísticas Vitales del Departamento de Salud de Puerto Rico. Esta dependencia fue creada con el propósito de registrar, coleccionar, custodiar, preservar, enmendar y certificar hechos vitales de las personas nacidas en Puerto Rico. 24 *997 L.P.R.A. sec. 1042 (1). La jurisprudencia ha reconocido que el propósito de la Ley del Registro Demográfico es conservar un registro de los hechos vitales que ocurran en Puerto Rico. León Rosario v. Torres, 109 D.P.R. 804 (1980); Delgado, Ex parte, 165 D.P.R. 170, 186-190 (2005).
El nacimiento, su fecha y lugar, el nombre o la identidad, el sexo y la filiación materna y paterna de una persona, son algunos de los hechos vitales que recoge, conserva y publica el Registro Demográfico. Tales datos vitales hechos se registran en el certificado de nacimiento del inscrito, a tenor de la legislación citada. 24 L.P.R.A. see. 1133.
La Ley del Registro Demográfico provee el procedimiento para enmendar el certificado de nacimiento, a manera de excepción. La Ley dispone:

“[L]as omisiones o incorrecciones que aparezcan en cualquier certificado antes de ser registrados en el Departamento de Salud podrán ser salvadas insertando las correcciones o adiciones necesarias en tinta roja en dicho certificado, pero luego de haber sido archivado en el Departamento de Salud, no podrá hacerse en los mismos rectificación, adición ni enmienda alguna que altere sustancialmente el mismo, sino en virtud de orden del Tribunal de Distrito, cuya orden, en tal caso, será archivada en el Departamento de Salud haciendo referencia al certificado a que corresponda.

Para obtener dicha orden, deberá presentar el interesado una solicitud a la Sala del Tribunal de Distrito de su domicilio, exponiendo bajo juramento su pretensión y formulándola debidamente acompañada de la prueba documental pertinente en apoyo de su solicitud. Copia de la solicitud y de toda la prueba documental le será remitida al Ministerio Fiscal simultáneamente con su radicación, quien deberá formular su posición dentro del término de 10 días.

[...]

El cambio, adición o modificación de nombre o apellido, sólo podrá hacerse a instancia del interesado, quien deberá presentar ante cualquier Sala del Tribunal de Distrito oportuna solicitud, expresando bajo juramento los motivos de su pretensión, acompañada de la prueba documental pertinente en apoyo de su solicitud. ”

24 L.P.R.A. see. 1231.
Esta disposición se complementa con la sección 1071-19 del Reglamento del Registro Demográfico, que a su vez dispone:

“Correcciones o alteraciones después de hecha la inscripción- Después que un certificado haya sido aceptado por el registrador, no podrá ser objeto de ningún cambio, borradura o alteración, así como tampoco la trascripción hecha en el libro de récord, sin el debido procedimiento de ley. Los errores materiales que aparecieren en cualquier certificado al ser presentado para inscripción o luego de haber sido inscrito, consistentes en la equivocación de un nombre, apellido, palabra o frase no esenciales, podrán subsanarse escribiendo correctamente con tinta roja la palabra o palabras erróneamente escritas o insertando la palabra o palabras omitidas. Las tachaduras que fueren necesarias se harán de modo que siempre se pueda leer la palabra tachada. Para efectuar dichas correcciones, los registradores exigirán la prueba que, según los casos, estimen oportuna.

Es decir, la ley de Puerto Rico únicamente permite las correcciones o enmiendas sustanciales en certificados ya registrados mediante la intervención de un tribunal competente. Sólo los errores no esenciales pueden subsanarse por los Registradores antes de la inscripción mediante la tachadura del error y la inserción de la palabra correcta con tinta roja. ”

14. El Restatement of the Law 2d, Conflicts of Laws (Revisión 1988) en sus Secciones 93-121 sugiere las normas que deben regir la aplicación de la cláusula de “full faith and credit” entre los estados y territorios de estados Unidos. La Sección 102 expresa sobre el tema que nos ocupa:

“A valid judgment that orders the doing of an act other than the payment of money, or that enjoins the doing of an act, may be enforced, or be the subject of remedies, in other states. ”

15. Esta disposición, contenida en la Ley de Seguro Social (Title 42 U.S.C., Ch. 7, Subch. IV. Grants to States for Aid and Services to Needy Families with Children and for the Child-Welfare Services, Part D. Child Support and Establishment of *998 Paternity, § 652. Duties of the Secretary of Health and Human Services), exige que el documento en el que se haga el reconocimiento voluntario que merece “full faith and credit” contenga determinada información:

“(a) [...]; duties:

The Secretary shall establish, within the Department of Health and Human Services a separate organizational unit, under the direction of a designee of the Secretary, who shall report directly to the Secretary and who shall:

[...]

(7) provide technical assistance to the States to help them establish effective systems for collecting child and spousal support and establishing paternity, and specify the minimum requirements of an affidavit to be used for the voluntary acknowledgment of paternity which shall include the social security number of each parent and, after consultation with the States, other common elements as determined by such designee. ”

42 U.S.C.A. § 652(a)(7).